**SIGNED THIS: May 08, 2006**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| LONDALE BEASLEY, ) | |
| ) | Case No. 06-70046 |
| Debtor. ) | |

# O P I N I O N

The issue before this Court is how the new requirement imposed on Chapter 13 debtors of an "applicable commitment period" for Chapter 13 plan payments should be interpreted. Londale Beasley, the Debtor, filed his Fourth Amended Chapter 13 Plan and seeks to have it confirmed. John H. Germeraad, the Chapter 13 Trustee, objected to confirmation on several grounds, including an alleged failure by the Debtor to propose plan payments for a properly-calculated applicable commitment period. The Debtor asserts that

-1-

the applicable commitment period is three years, but the Trustee asserts that a five-year period is mandated. The Debtor and the Trustee have asked the Court to resolve this contested issue before addressing other issues raised by the Debtor's Fourth Amended Chapter 13 Plan and the objection of the Trustee thereto.

The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") applies to all bankruptcy cases filed on or after October 17, 2005. The Debtor filed his petition on January 18, 2006, and, accordingly, the provisions of BAPCPA control the outcome here. Several of the new provisions of the Code must be reviewed to determine how an applicable commitment period should be calculated.

The concept of an applicable commitment period is introduced by 11 U.S.C. § 1325(b)(1)(B), which addresses requirements for plan confirmation and provides as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> . . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The term "applicable commitment period" is actually defined in 11 U.S.C. § 1325(b)(4)(A):

-2-

> (4) For purposes of this subsection, the 'applicable commitment period'-
>
>> (A) subject to subparagraph (B), shall be-
>>
>>> (i) 3 years; or
>>>
>>> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than –
>>>
>>>> (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>>>>
>>>> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>>>>
>>>> (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4(.)

A key term in the definition of "applicable commitment period" is "current monthly income," which is defined at § 101(10A):

> (10A) The term 'current monthly income'-

>> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –
>
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedules of current income required by section 521(a)(1)(B)(ii); or
>
>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii)(.)

Official Form B22C (Chapter 13) has been developed to assist in determining a debtor's current monthly income, which is necessary to the calculation of the applicable commitment period. All Chapter 13 debtors are required to file Form B22C with their petition. Fed.R.Bankr.P. 1007(b)(6).

The Debtor here filed his Form B22C with his petition. Although the Debtor is married, he filed an individual petition without his spouse joining in the filing. As required by 11 U.S.C. § 101(10A), however, Mrs. Beasley's income was included on Part I of Form B22C where current monthly income is calculated. Because the petition was filed on January 18, 2006, Mrs. Beasley's income for the six preceding calendar months - July through December, 2005 - was used to calculate her average monthly income. Pay stubs provided indicate that Mrs. Beasley earned a total of $20,624

-4-

during that six-month period, which means she earned an average of $3,437.39 per month.[1] The Debtor indicated that he received $200.01 per month in retirement benefits.[2] Accordingly, the total current monthly income reported for the Debtor and his spouse on Part I of Form B22C was $3,637.40.

Part II of Form B22C provides for the calculation of the § 1325(b)(4) commitment period. At Part II, a debtor is directed to annualize current monthly income by multiplying the results of Part I by 12. Here, the Debtor multiplied $3,637.40 by 12, resulting in an annualized income of $43,648.80. Next, in accordance with the formula set forth at § 101(10A), Part II requires a comparison of a debtor's annualized income with the applicable median family income for a comparably-sized household. If the amount of a debtor's annualized income is equal to or less than the applicable median income, the debtor is directed to check the box on the Form

---

[1] The Court does not believe that there is any dispute between the Trustee and the Debtor as to the amount of income received by the Debtor's spouse during the period of July through December, 2005. If, however, some dispute on this factual issue exists, this Opinion is not intended to resolve that dispute and neither party shall be prejudiced on that issue by anything contained in this Opinion.

[2] The Court notes that, from the documents submitted by the parties, it appears that the Debtor has gross retirement income of $215.01 per month and net retirement income of $200.01 per month. The Debtor used the latter figure on Form B22C, but the Court believes that the former number should have been used. This difference would not, however, change the result of the calculations or this Opinion.

indicating that the commitment period is three years.

The Debtor and his spouse have one dependent child. The median income for a household of three in Illinois at the time of filing was $62,178.[3] Because the median income applicable to this Debtor's household substantially exceeded his household's annualized income, the Debtor checked the box for a three-year commitment period and proceeded to propose a three-year Chapter 13 plan.

Notwithstanding the Debtor's compliance with §§ 101(10A) and 1325(b)(4) and proper preparation of Form B22C, the Trustee objects and asserts that a five-year commitment period is required in this case. The Trustee raises two factual issues in support of his position.

First, the Trustee argues that Mrs. Beasley's income shown on Part I of Form B22C understates the actual income she receives. Mrs. Beasley is a teacher employed by the Decatur Illinois School District and is paid an annual salary in excess of $63,000. The School District pays its teachers their annual salaries, however, over the period when school is actually in session rather than

---

[3] The Court believes that this figure came from the U.S. Trustee's website, which provides a table of median family incomes based on location and household size. The Court also believes that the accuracy of this figure for use on Form B22C for this Debtor is not disputed. If, however, there is some dispute as to the accuracy of the figure, this Opinion is not intended to resolve that dispute, and neither party shall be prejudiced on that issue by anything contained in this Opinion.

throughout the calendar year.  Accordingly, Mrs. Beasley received no income in July, 2005, and only about $1,500 of income in August, 2005.  The Trustee asserts that the use of the period of July through December, 2005, to determine Mrs. Beasley's income for calculation of her husband's applicable commitment period resulted in a skewed calculation.

Second, the Trustee points out that the Debtor has approximately $1,700 of monthly Social Security income which was not required to be included in the income calculation at Part I of Form B22C.  The Trustee asserts that these funds should be considered in calculating the applicable commitment period.

In making his arguments, the Trustee does not point out any flaw in the Debtor's calculations based on the requirements of §§ 101(10A) and 1325(b)(4).  Rather, the Trustee expresses unhappiness with the results of the calculations and argues that the Court should impose on the Debtor an obligation to make plan payments for two additional years because the Beasleys' actual annual household income exceeds the applicable family median income used for comparison purposes.

The Trustee suggests that In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006), provides support for his position.  In Hardacre, the court found that the calculation of the debtor's "projected disposable income" for § 1325(b)(1)(B) plan payments must be based on a debtor's actual anticipated income over the term of the plan

and not just by a strict application of the statutory definition of "current monthly income". Id. *at* 338.

Hardacre does not support the Trustee's position. In Hardacre, the Court was reviewing different statutory provisions than those at issue here. The issues to be decided there were how to calculate "disposable income" and "projected disposable income". The Court found that, although "disposable income" may be calculated by use of the statutory formulas, the term "projected" requires an analysis of a debtor's actual income and expenditures to ultimately decide the amount of the plan payments to be made. Id. *at* 723. *See also* In re Jass, 2006 WL 871235 (Bankr. D. Utah 2006).

The Hardacre analysis is not germane to the issues here because the statutory formulas and Form B22C do not lead to a fully-dispositive calculation of projected disposable income. The formulas and Form lead only to a calculation of disposable income. To give meaning to the term "projected", the Court must consider the "income that the debtor reasonably expects to receive during the term of her plan." Hardacre, *supra*, 338 B.R. *at* 723.

In contrast, the statutory formulas and Form B22C do lead to a fully-dispositive calculation of the applicable commitment period. When the calculation is complete, a debtor is directed to a three-year or five-year commitment period, and no further analysis is suggested, required, or allowed by any portion of the

-8-

relevant statutes.

If Congress had desired to build flexibility into the determination of the applicable commitment period, it could have done so. In Chapter 7 cases, BAPCPA requires a similar calculation on a similar form for the determination of whether a presumption of abuse arises. 11 U.S.C. § 707(b); Official Form B22A (Chapter 7). By use of the term "presumption", Congress provided for some judicial discretion to review the actual income and expenditures of Chapter 7 debtors before finding that abuse exists. Congress could have drafted § 1325(b)(4) so that the statutory calculation of the applicable commitment period would raise only a presumption of what the period should be, reserving discretion in the bankruptcy courts to review actual figures and make the final determination. Congress chose, however, not to make the calculation set forth in § 1325(b)(4) and on Form B22C merely presumptive and this Court has no choice but to follow the law as written.

The first rule of statutory construction is to give words their plain meaning. Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004); U.S. v. Jones, 372 F.3d 910, 912 (7th Cir. 2004); In re Baker, 430 F.3d 858, 860 (7th Cir. 2005). The Trustee has not identified and the Court cannot find ambiguity in the Code provisions which define the method of calculating the applicable commitment period. Accordingly, the Court must give the words of the statute their plain meaning, and

that leads to the conclusion that the calculations required to be made on Form B22C are fully determinative of the applicable commitment period.

In making this finding, the Court is cognizant of the fact that strict compliance with the definition of "current monthly income" means that some debtors with high but irregular income may be able to avoid the imposition of the longer payment period by the timing of their filings, while debtors with lower incomes are forced to pay for five years.  That may be unfair, but that is what the statute requires as it is currently written.  The remedy for that problem is legislative, not judicial.

For the reasons set forth above, this Court finds that the applicable commitment period for Debtor Londale Beasley's Chapter 13 plan was correctly calculated by the Debtor and is three years.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###